[Cite as *In re A.B.*, 2023-Ohio-1047.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE A.B.

A Minor Child

:
:
:

No. 111823

JOURNAL ENTRY AND OPINION

**JUDGMENT:** DISMISSED IN PART; REVERSED IN PART
**RELEASED AND JOURNALIZED:** March 30, 2023

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL21107912

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Jason T. Whitehead, II, Assistant
Prosecuting Attorney, *for appellee.*

Patituce & Associates, LLC and Catherine Meehan, *for
appellant*.

MARY EILEEN KILBANE, J.:

{¶ 1} Defendant-appellant A.B. appeals from his adjudication of
delinquency on one count of sexual battery. For the reasons that follow, we dismiss
in part and reverse in part.

**Factual and Procedural History**

{¶ 2} On September 8, 2021, A.B., d.o.b. 1/4/2007, was charged with one
count of rape in violation of R.C. 2907.02(A)(1)(b). This charge arose from an

incident on or around June 28, 2021, in which two of A.B.'s cousins were having a sleepover at A.B.'s house. A.B., who was 14 years old at the time, and his seven-year-old female cousin were sleeping on a sofa in the living room. At some point during the night, A.B. pulled down his cousin's pants and digitally penetrated her.

{¶ 3} On November 3, 2021, the court ordered A.B. to be placed on home detention with GPS monitoring. A.B. remained on home detention for the duration of the proceedings. Following a pretrial hearing on January 12, 2022, the court ordered the GPS monitor to be removed.

{¶ 4} On March 24, 2022, the state moved to amend the complaint to one count of sexual battery in violation of R.C. 2907.03(A)(1), a felony of the second degree. A.B. then entered an admission to the amended complaint, and the court adjudged him to be delinquent. The court continued the case for a probation report, sexual offender assessment, and dispositional hearing.

{¶ 5} On May 3, 2022, A.B. filed a dispositional memorandum. The memorandum argued that the court should impose a term of community control. The memorandum asserted that A.B. has no prior adjudications in juvenile court and that the incident in this case was an isolated incident for which A.B. had immense regret and embarrassment. The memorandum also outlined that beginning in August 2021, A.B. was actively involved in sex offender treatment with Dr. Benjamin Miller ("Dr. Miller"). A.B. attached various supporting materials to the dispositional memorandum, including letters from his grandparents, parents, adult sister, teachers, coaches, Dr. Miller, and himself. Dr. Miller recommended to

the court that A.B. continue outpatient juvenile sex offender treatment. Dr. Miller further opined that based on his evaluation of A.B., including A.B.'s lack of any sexual-disorder-based diagnosis, his risk of recidivism is low.

{¶ 6} A.B. also underwent a sexual risk assessment through Ohio Guidestone, which determined that A.B. was a good candidate for the Protect Program, an outpatient community-based juvenile sex offender treatment program. Specifically, the Ohio Guidestone report included the following summary and treatment recommendations:

> [A.B.] is a good candidate for the Protect Program. He has been engaging in sex offender specific [therapy] since August therefore some of the material in the Protect program may need to be reviewed and or taught. He needs ongoing psycho education about sex laws in Ohio, rules of consent and healthy sexual development. [A.B.] needs support and encouragement to continue to have successes and build competencies in his areas of enjoyment, interest and areas of strengths. [A.B.] needs to develop and implement emotional regulation and response delay techniques to address sexual acting out behavior. [A.B.] needs to continue to develop empathetic behaviors and gain a greater understanding of how the sexual event has impacted his victim. A safety plan will need to be completed.

Subsequent treatment summaries from Ohio Guidestone, following the development of a safety plan, reflected that based on his engagement with Dr. Miller, A.B. had a demonstrated knowledge of the material addressed in the Protect Program and that there were no violations of the safety plan.

{¶ 7} Finally, the probation officer found that A.B. had a low risk of recidivism and, therefore, the probation officer's recommendation for A.B. was a period of probation with continued treatment from Dr. Miller.

{¶ 8} On May 6, 2022, the court held a dispositional hearing. The court heard from the assistant prosecuting attorney, A.B.'s counsel, the victim's parents, and A.B. The court ordered a minimum one-year commitment to the Ohio Department of Youth Services, suspended that commitment, and placed A.B. on community control for three years. The court also ordered A.B. to complete a sexual offender's assessment and complete inpatient sexual offender treatment at Abraxas.

{¶ 9} At the conclusion of the dispositional hearing, the court classified A.B. as a Tier I sexual offender. With respect to this classification, the court made the following findings:

> The court finds that the child has been adjudicated delinquent for having committed a sexually oriented offense and that the juvenile was at least fourteen or fifteen years old and had not previously been adjudicated delinquent for having committed a sexually oriented or child victim offense. The child therefore [is] not subject to the mandatory juvenile offender registrant classification provisions in Ohio Revised Code Section 2152 and 2950.

> Upon the commencement of a discretionary juvenile offender registration hearing, to the extent applicable, the court reviewed the nature of the sexually oriented offense or the child-victim oriented offense committed by the child; whether the child has shown any genuine remorse or compunction for the offense; the public interest and safety; the factors set forth in division (K) of section 2950.11 of the Revised Code, the factors set forth in divisions (B) and (C) of section 2929.12 of the Revised Code; the offense, and the victim; the results of any treatment provided to the child and of any follow-up professional assessment of the child.

Specifically, the court went on to list the factors in favor of and against registration.

{¶ 10} In favor of registration, the court listed the following factors:

The victim of the instant offense was under 13.

The victim did not induce or facilitate the offense.

The offender did not act under strong provocation.

There weren't substantial grounds to mitigate the offender's conduct.

The victim suffered seriously [sic] psychological harm as a result of this offense.

The offender's relationship with the victim facilitated the offense.

Youth did not participate in and complete sex offender specific therapy. [1]

The court noted that it afforded heavy weight to the victim's age, the victim having suffered serious psychological harm, and the offender's relationship with the victim.

{¶ 11} Against registration, the court listed the following factors:

The youth was not previously found delinquent of a sexually oriented offense.

The offender was previously found delinquent of a non-sexual offense.

The Instant Offense did not involve more than one victim.

Drugs or alcohol were not used by the youth to impair the victim.

The offender was not previously found delinquent on [an] offense that caused physical harm to a person.

The offender did not attempt to cause or made an actual threat of physical harm with a deadly weapon.

The offender did not commit the offense while on probation or parole.

The youth does have a mental illness or mental disability (ADHD).

The youth has not demonstrated a pattern of sexual offending.

The youth did not display cruelty nor did he make any threats of cruelty during the offense.

---

[1] This finding is contrary to the record, which shows that A.B. had been engaged in treatment at the time of this disposition.

The youth has shown remorse.

With respect to whether A.B. had participated in and completed sex offender specific therapy, the court stated:

> While he's participated and he's not completed it, and definitely not to the satisfaction of Ohio Guidestone, if they're indicating that he needed to complete the Protect Program, so that's a factor favoring registration. [2]

{¶ 12} Finally, the court found that numerous factors were not applicable to A.B., specifically that A.B. did not hold a public office or position of trust within the community, his position did not oblige or prevent him to prevent the offense, his professional reputation or position did not facilitate the offense, A.B. did not commit the offense for hire or as part of an organized crime, and the offense was not motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion.

{¶ 13} On May 6, 2022, A.B. voluntarily surrendered to the Juvenile Detention Center as ordered. Because there were no available beds at Abraxas, A.B. was detained at the juvenile detention center for several days while waiting for a bed to become available. On May 9, 2022, A.B. filed a motion for release pending placement in treatment. The motion argued that A.B. had been actively involved in outpatient treatment, had continuously complied with home detention, and was not a threat to the community; therefore, releasing A.B. on home confinement pending

---

2 While the Ohio Guidestone report did recommend that A.B. complete the Protect Program, there is nothing in the record to support the statement that A.B. had not satisfactorily engaged in treatment at this point. To the contrary, the Ohio Guidestone report emphasizes A.B.'s positive engagement in treatment.

placement in Abraxas would allow him to finish his school year and continue with his sex offender treatment with Dr. Miller.

{¶ 14} A.B. was released from detention on May 9, 2022, placed on home detention, and was again placed on GPS monitoring while awaiting placement at Abraxas.

{¶ 15} On June 1, 2022, A.B. enrolled in outpatient treatment through the Protect Program while continuing treatment with Dr. Miller.

{¶ 16} On June 30, 2022, A.B. filed a motion to modify community control and eliminate the condition that he participate in inpatient treatment at Abraxas. The motion argued that it would be detrimental to remove A.B. from his current environment and be placed in a restrictive inpatient setting with high-risk offenders. Letters from Dr. Miller, the director of Ohio Guidestone, and A.B.'s Protect Program social worker were attached to this motion. These letters opined that given A.B.'s extremely low risk of recidivism and his active engagement with outpatient treatment at the Protect Program and his individual private counseling, it was imperative that A.B. remain in the least restrictive environment. The Ohio Guidestone letter stated, in relevant part:

> [A.B.] and his family were extremely cooperative during the complete assessment process which included Behavioral Health Diagnostic Assessment, and Sexual Risk Evaluation using evidence-based risk assessment tools J-SOAP II and ERASOR which are current best practice internationally in Juvenile Sex Offender Evaluation for Risk and Treatment Recommendation. The resulting scores in both tools were in the extremely low risk level. (Scores of 2 out of 56 risk assessment points). Based on all evaluations he was very appropriate

and recommended to our Outpatient, Community Based Juvenile Sex Offender (JSO) Program, PROTECT.

Besides the recommendation of the assessor who facilitated the assessment; the ongoing therapist has described the family and [A.B.] as thoroughly engaged in the development and abidance of the safety plan, the development of the Treatment Plan and the ongoing therapy. [A.B.] has been engaged and receptive in this first month of PROTECT treatment according to the monthly report to probation.

PROTECT is a Certified by the State of Ohio JSO Juvenile Sex Offender Program utilizing evidence-based therapy and case management which individualizes treatment and requires family support and monitoring from both probation and treatment providers. This is also best practice for juveniles who are low-risk to recidivate. Providing high level of care placements to juveniles who are low-risk is counter indicated and detrimental to the care according to the research.

It is because of the possible recommendation for residential services that precipitated the need to advocate with this letter. According to almost all of the research I have read, it is imperative that the level of care is in the least restrictive environment. The assessment of [A.B.] strongly recommended outpatient level of care. Also in the research, is that Outpatient Treatment has shown to be as or more effective in treatment of Sexual Behavior Problems (SBP). According to the US Department of Justice, *International Journal of Offender Therapy and Comparative Criminology*, "[g]enerally, outpatient treatment is more appropriate for nonviolent first offenders who do not indicate serious psychopathology, have competent social, intellectual, and psychological resources and skills to manage life demands adequately, and are motivated for treatment."

Please consider this when apply a [more] restrictive level of care to [A.B.] who by research standards and that [A.B.] and his family are and will be serious in their desire to embrace this treatment, would not improve his outcomes, but could potentially harm his future.

The letter from A.B.'s social worker similarly stated:

[A.B.] has been an active and engaging participant in our sessions. He is timely, he asks relevant questions and will share knowledge that we have discussed and apply it to daily living. He continues to demonstrate remorse, [guilt], responsibility and expresses empathy. It is in his best interest to remain in his home setting under the care and

guidance of his parents and remain in sex offender specific treatment with [Ohio Guidestone.]

{¶ 17} On July 7, 2022, A.B. filed a "motion to terminate GPS monitoring/motion to engage in community service and other school related functions." The motion noted that A.B. remained compliant with both his ongoing outpatient treatment and the terms and conditions of his home detention. The motion requested that A.B. be allowed to participate in specific academic and extracurricular activities.

{¶ 18} On July 12, 2022, the state filed briefs in opposition to A.B.'s motion to modify the terms of his community control and motion to terminate GPS monitoring.

{¶ 19} On July 27, 2022, the court denied A.B.'s motion to modify the terms of his community control and motion to terminate GPS monitoring. On August 3, 2022, A.B. filed a notice of appeal.

{¶ 20} A.B. appeals, presenting two assignments of error for our review:

I. The court abused its discretion when it placed appellant into inpatient sexual offender treatment as a condition of his community control.

II. The trial court abused its discretion and erred in classifying appellant as a Tier I sexual offender.

**Legal Analysis**

**I. Inpatient Treatment**

{¶ 21} In his first assignment of error, A.B. argues that the juvenile court abused its discretion when it placed him into inpatient sexual offender treatment as

a condition of his community control. Before we can address A.B.'s assignment of error, we must determine if this issue is moot.

{¶ 22} When a defendant voluntarily completes their sentence, an appeal from that judgment is moot "'when no evidence is offered from which an inference can be drawn that the defendant will suffer some collateral disability or loss of civil rights from such judgment or conviction.'" *State v. Golston*, 71 Ohio St.3d 224, 226, 643 N.E.2d 109 (1994), quoting *State v. Wilson*, 41 Ohio St.2d 236, 325 N.E.2d 236 (1975), syllabus. The defendant must demonstrate that they did not voluntarily complete the sentence and they are subject to collateral disability or loss of civil rights. *Id.*, quoting *Wilson* at 237. "A collateral disability is an adverse legal consequence of a conviction or judgment that survives despite the court's sentence having been satisfied or served." *Solon v. Bollin-Booth*, 8th Dist. Cuyahoga No. 97099, 2012-Ohio-815, ¶ 11, citing *In re S.J.K.*, 114 Ohio St.3d 23, 2007-Ohio-2621, 867 N.E.2d 408, ¶ 10.

{¶ 23} Here, the juvenile court docket reflects that on July 26, 2022, A.B. again voluntarily reported and was placed in highly intensive inpatient treatment at Abraxas. The docket further reflects that on November 16, 2022, A.B.'s probation officer filed a motion to terminate placement because A.B. had completed his treatment at Abraxas, he had been successful in community and home visits, his family had participated in treatment services, and his treatment team was recommending that he be discharged. Finally, the docket reflects that on November 29, 2022, the juvenile court held a hearing and granted the motion to terminate

placement and ordered A.B. released from Abraxas. Thus, the community-control condition A.B. seeks to challenge in his first assignment of error has been terminated because A.B. has successfully satisfied the requirements of that condition. Because A.B. has not demonstrated that he did not voluntarily complete the inpatient treatment or that he is subject to collateral disability, his first assignment of error is moot. Therefore, A.B.'s first assignment of error is disregarded and this portion of the appeal is dismissed as moot.

## II. Sexual Offender Classification

{¶ 24} In his second assignment of error, A.B. argues that the trial court abused its discretion and erred in classifying him as a Tier I Sexual Offender. Specifically, A.B. argues that the trial court concluded that there were more statutory factors weighing against registration than in favor of registration, yet nonetheless went on to impose registration requirements.

{¶ 25} R.C. 2152.83(B) provides that the juvenile court has discretion to impose registration duties on a juvenile offender if (1) the act for which the child is adjudicated delinquent is a sexually oriented offense or a child-victim oriented offense that the child committed on or after January 1, 2002; (2) the child was 14 or 15 years of age at the time of committing the offense; and (3) the court was not required to classify the child a juvenile offender registrant under R.C. 2152.82. R.C. 2152.82 provides that registration for repeat juvenile offenders is mandatory. The incident in this case was A.B.'s first and only offense, and he was 14 years old at the time of the incident. Thus, for A.B., registrant classification was not mandatory, and

the judge had discretion to determine whether A.B. should be classified as a sexual offender.

{¶ 26} R.C. 2152.83(B)(2) provides for a hearing, and R.C. 2152.83(D) requires the judge to consider all relevant factors, including but not limited to, all of the following:

(1) the nature of the sexually oriented offense or the child-victim oriented offense committed by the child;

(2) whether the child has shown any genuine remorse or compunction for the offense;

(3) the public interest and safety;

(4) the factors set forth in division (K) of section 2950.11 of the Revised Code;

(5) the factors set forth in divisions (B) and (C) of section 2929.12 of the Revised Code as those factors apply regarding the delinquent child, the offense, and the victim; and

(6) the results of any treatment provided to the child and of any follow-up professional assessment of the child.

R.C. 2152.83(D).

{¶ 27} Which tier a juvenile sex offender registrant is placed in rests within the juvenile court's discretion. *In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, ¶ 20. An abuse of discretion implies the trial court's decision was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983); *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463.

{¶ 28} Here, the juvenile court engaged in an extensive discussion on the record of each statutory factor listed in R.C. 2152.83(D), including but not limited to the nature of the sexually oriented offense, whether the child has shown any genuine remorse or compunction for the offense, the public interest and safety, the results of any treatment provided to the child, the child's age, the child's prior criminal delinquency record, and the age of the victim. The court stated that it determined that nine factors weighed in favor of registration and 12 factors weighed against registration. The court went on to state that it afforded significant weight to several of the factors weighing in favor of registration, including the fact that the victim suffered serious psychological harm as a result of the incident and the fact that A.B. and the victim had a close familial relationship.

{¶ 29} The court's finding with respect to A.B.'s participation in and completion of sexual offender therapy is unsupported by the record. The court's statement on the record regarding this factor appears to misinterpret the report from Ohio Guidestone regarding A.B.'s sexual offender treatment. The court stated that A.B. had not completed treatment to the satisfaction of Ohio Guidestone based on their recommendation that he complete the Protect Program. The court seemed to infer that the Ohio Guidestone report — one of numerous reports before the court indicating that A.B. had an extremely low risk of recidivism — indicated that A.B. had not satisfactorily engaged in sexual offender treatment at the time of the dispositional hearing. This inference is incorrect. The juvenile court mischaracterized the recommendations in the report and ignores the fact —

contained in the report and in numerous other documentation throughout the record — that A.B. had been engaged in sexual offender specific therapy with Dr. Miller for almost a year before the dispositional hearing. The recommendations from Ohio Guidestone were specifically that A.B. receive treatment in the least restrictive setting, following their thorough assessment of A.B. and of the facts in the case.

{¶ 30} Finally, we are compelled to note that because A.B. completed four months of intensive inpatient treatment at Abraxas — against the recommendation of every professional involved in the case — to whatever extent the juvenile court's finding was supported by the record at some point, the finding is no longer correct. We are also mindful that this four-month period of residential inpatient treatment constituted a significant disruption in A.B.'s life, preventing him from having more than minimal contact with his family and from attending a significant portion of his high school academic year. A.B. completed treatment at Abraxas, continues to be engaged in treatment, and has had no issues in complying with the terms of his treatment or other court orders throughout the duration of this case.

{¶ 31} In light of the foregoing, we find that the juvenile court abused its discretion in classifying A.B. as a Tier I sexual offender. A.B.'s second assignment of error is sustained.

{¶ 32} Judgment dismissed in part and reversed in part.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

EILEEN A. GALLAGHER, P.J., CONCURS;
EILEEN T. GALLAGHER, J., CONCURS IN PART AND DISSENTS IN PART
(WITH SEPARATE OPINION)


EILEEN T. GALLAGHER, J., CONCURRING IN PART AND DISSENTING IN PART:

{¶ 33} I concur with the assignment of error No. 1. However, I respectfully dissent with the majority's resolution of assignment of error No. 2.